Charles E. EDMONDSON and Walter B.
Johnson, Jr., Trustees, Plaintiffs,

v.

CHESAPEAKE CLAMCHIP CORPORA-
TION, Defendant,

and

United States of America, Intervening
Defendant.

Civ. No. 71–1126.

United States District Court,
D. Maryland.

Nov. 27, 1972.

Donald A. Krach, William C. Stifler, III, and Niles, Barton & Wilmer, Baltimore, Md., for the Trustees.

George Beall, U. S. Atty., Ransom J. Davis, Asst. U. S. Atty., and Jack A. McCrary, Dist. Counsel, Baltimore, Md., Small Business Administration, for the Government.

HARVEY, District Judge:

In this civil action, the Court is called upon to determine the priority of liens of the United States and of others on certain Maryland real estate. This suit was originally instituted as a foreclosure action in the Circuit Court for Dorchester County by the Trustees of a duly recorded Deed of Trust and was removed to this Court pursuant to applicable provisions of 28 U.S.C. §§ 1441–1446.

At the time of foreclosure, there were various recorded liens outstanding on the real property involved, including one in favor of Small Business Administration, a federal agency. In the Auditor's Report and Account filed in the state foreclosure proceedings after the sale of the property, some $3,468.04 was shown as the amount to be distributed to Small Business Administration under a recorded Deed of Trust in its favor.[1] The government intervened in the state proceedings and filed exceptions to such Report and Account, contending that the proper amount distributable to Small Business Administration was $14,987.60. Inasmuch as an agency of the United States was involved, the case was thereafter removed to this Court by the government which claims that its exceptions should be sustained under federal law.

Most of the essential facts have been stipulated. In 1965, Chesapeake Clamchip Corporation (Chesapeake) began operation in Cambridge, Dorchester County, Maryland. Chesapeake obtained financing from local banks, from agencies of the United States, and from agencies of the State of Maryland in 1965 and again in 1968. The only loans relevant to this case are the following, all of which were secured by a deed of trust or mortgage on the real property owned by Chesapeake in Cambridge: (1) Loan from The First National Bank of Maryland and the National Bank of Cambridge to Chesapeake in the original amount of $90,000.00 secured by a Note and a Deed of Trust from Chesapeake to Charles E. Edmondson and Walter B. Johnson, Jr., Trustees, dated June 28, 1965, and recorded among the Mortgage Records of Dorchester County on July 29, 1965, at 2:45 P. M., in Liber P.L.C. No. 141, Folio 66; (2) Loan apparently from Small Business Administration to Chesapeake in the original amount of $213,200.00 secured by a Note and a Deed of Trust from Chesapeake to Meredith R. Hoffmaster and Thomas F. Regan, Trustees, dated June 28, 1965, and recorded among the Mortgage Records of Dorchester County on July 29, 1965, at 2:51 P. M., in Liber P.L.C. No. 141, Folio 85; and (3) Loan from the National Bank of Cambridge to Chesapeake in the original amount of $25,000 secured by a mortgage from Chesapeake to the National Bank of Cambridge dated June 28, 1968, and recorded among the Mortgage Records of Dorchester County on July 18, 1968 in Liber P.L.C. No. 152, Folio 78.

A Subordination Agreement was entered into by Small Business Administration having the effect of subordinating the lien noted in (2) above to the lien noted in (3) above. The Subordination Agreement was dated May 9, 1968,

---

1. The gross amount of the sale was $110,932.00, not nearly enough to satisfy all the outstanding liens.

and recorded among the Mortgage Records of Dorchester County on July 18, 1968 in Liber P.L.C. No. 152, Folio 69.

Various state and local real estate taxes for years between 1968 and 1971, including penalties and interest, were not paid by Chesapeake when due and were outstanding when the foreclosure action was filed. It has been agreed that the total amount of these taxes plus penalties and interest is $11,519.56, and it is this latter sum which is at issue in the pending case.

■ ■ Under Maryland law, state and local real estate taxes are a first lien on real estate and would have priority over other liens on the property in favor of private parties, whether prior or subsequent. § 48(c), Article 81, Annotated Code of Maryland (1969 Repl. Vol.). However, under federal law, a prior lien in favor of the United States takes precedence over a subsequent lien for state and local taxes. United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954); United States v. Ringwood Iron Mines, Inc., 151 F.Supp. 421 (D.N.J.1957), affirmed 251 F.2d 145 (3d Cir. 1958); cert. den. 356 U.S. 974, 78 S.Ct. 1138, 2 L.Ed.2d 1148 (1958). A problem involving the circuity of liens is therefore here involved.[2] The banks which are parties to the aforementioned Deeds of Trust and Mortgage enjoy a priority over the government because of the Subordination Agreement of May 9, 1968. But the state and local tax claims are superior to those of the banks by virtue of Maryland law. To complete the circle, the claim of the federal government is superior to state and local tax claims under federal law unless, as contended by the Trustees here, another federal statute alters these priorities. As the Court said in United States v. Ringwood Iron Mines, Inc., *supra*, 151 F.Supp. at page

426, "in the absence of contrary directions in federal statutes, a lien in favor of the United States takes precedence over a later lien for municipal taxes."

The statute relied upon by the Trustees is 15 U.S.C. § 646, a part of the Small Business Act, which provides as follows:

"Any interest held by the [Small Business] Administration in property, as security for a loan, shall be subordinate to any lien on such property for taxes due on the property to a State, or political subdivision thereof, in any case where such lien would, under applicable State law, be superior to such interest if such interest were held by any party other than the United States."

The Trustees argue that the government's interest in the real property here was that of the Small Business Administration and that therefore the government's lien in this case is subordinate to the state and local tax lien. The Auditor had taken this approach in his Report and Account and had deducted the real estate taxes due from the share distributable to Small Business Administration. The question presented then is whether the priorities of these liens are to be controlled by 15 U.S.C. § 646, in which event the Trustees will prevail, or whether they are controlled by the general federal rule that a lien of the United States takes precedence over a later lien for state and local taxes, in which event the government will prevail.

The documents recorded among the official mortgage records of Dorchester County uniformly support the Trustees' position. The Deed of Trust of June 28, 1965 securing the loan of $213,200 is in favor of Small Business Administration. It does not mention any other government agency. The affidavit attached to this Deed of Trust certifies that one Edgar Allen, who made the supporting

---

2. In H. B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank, 388 F.2d 156 (4th Cir. 1967), cert. den. 390 U.S. 1025, 88 S.Ct. 1413, 20 L.Ed.2d 282 (1968), the Fourth Circuit discussed the general principles applicable in resolving questions involving a circuity of liens.

oath, appeared as "the Attorney and Agent for Small Business Administration * * *." The Subordination Agreement which was recorded some 3 years later, is in similar form mentioning only Small Business Administration. The trustees rely on these documents in support of their argument that § 646 controls a decision here as to the priority of the liens involved.

At the trial, the government over objection produced evidence indicating that Small Business Administration (SBA) was acting for another agency of the federal government, namely, Area Redevelopment Administration (ARA)[3] in the transaction here involved.[4] Indeed, the government's evidence shows that ARA authorized the $213,200 loan in question and further authorized SBA to make and service the loan in question. The funds advanced were those of ARA and although nothing in the recorded documents would so indicate, SBA was acting as agent for ARA in making the loan. Accordingly, the government argues that § 646 is not applicable here since the government's interest in the real property involved is not that of SBA but is actually that of ARA.

■■ Undoubtedly, the priority of a debt due the United States is a federal question to be determined by federal law. United States v. Security Trust and Savings Bank, 340 U.S. 47, 49, 71 S.Ct. 111, 95 L.Ed. 53 (1950). In this case, however, the federal law to be applied includes § 646 which specifically refers to applicable state law for a determination of the priorities of the liens involved. As the Fourth Circuit said in United States v. Clover Spinning Mills Co., 373 F.2d 274, 278–279 (4th Cir. 1966), it is necessary in conformity with the express directive of § 646 to "turn to the state law which is determinative." Questions as to the validity of a deed of trust on land and the necessity and requisites of registration are to be determined by the laws of the state where the land embraced in the deed of trust is situate. Haas v. Rendleman, 62 F.2d 701, 702 (4th Cir. 1933), cert. den. 289 U.S. 750, 53 S.Ct. 695, 77 L.Ed. 1495 (1933).

■ The Maryland courts have held that strict and literal standards are to be applied to the form of mortgages and deeds of trust. Pagenhardt v. Walsh, 250 Md. 333, 338, 243 A.2d 494 (1968); Dyson v. Simmons, 48 Md. 207 (1878); Reiff v. Eshleman, 52 Md. 582, 588 (1879). In *Pagenhardt*, the Court of Appeals of Maryland held a mortgage invalid as to subsequent creditors because of the omission from the affidavit of consideration of the name of the bank officer who was shown by parol evidence to have actually made the affidavit. The Court of Appeals has observed that Maryland statutes requiring the registration of instruments passing title to real estate "are founded on the policy of requiring that every circumstance should appear on the face of the registry which is necessary to the devolution of the title to real estate." Schaidt v. Blaul, 66 Md. 141, 144, 6 A. 669, 670 (1886).

■ These cases compel the conclusion that under Maryland law SBA was the secured party under the Deed of Trust in question. The documents recorded among the Mortgage Records of Dorchester County are controlling. Any one examining such records would be on notice that SBA, and no other department or agency of the federal government, held the lien in question. The Deed of Trust and supporting affidavit dated June 28, 1965 and the subsequent Subordination Agreement and affidavit of May 9, 1968 all show solely an interest of SBA with no reference to any other governmental agency. Most assuredly then the State Auditor was correct in showing that distribution of the proceeds of foreclosure should be made

---

3. Area Redevelopment Administration is now known as Economic Development Administration.

4. All of the government's evidence was taken subject to the Trustees' objection.

to SBA pursuant to the provisions of all the recorded papers.

It is clear from the evidence here that the banks, with liens superior to that of the government, did not know that ARA was the agency actually involved. Under their Deeds of Trust, the banks had the right to advance money to pay taxes due, whereupon such sum would be a part of the debt secured by the Deed of Trust in question and would be superior to the government's lien in any event. Had the banks known that SBA was not the agency involved in the transaction and that therefore § 646 did not apply, they could have availed themselves of this right in order to protect their superior liens. With the documents all being executed in the name of SBA, the banks were entitled to rely on § 646 to protect themselves against tax liens which would otherwise have priority over their liens.

The proof presented by the government in this case cannot alter the fact that for title purposes under Maryland law SBA held the lien in question. Indeed, were this Court to agree with the government's argument that ARA and not SBA was the secured party, serious questions would arise concerning the validity of the Deed of Trust in question. § 30 of Article 21 of the Annotated Code of Maryland (1966 Repl.Vol.) provides that no deed of trust shall be valid except as between the parties thereto unless accompanied by an oath or affirmation "of * * * the party secured" that the consideration is true and bona fide. § 31 permits such affidavit to be made by an agent of the secured party but requires such agent to make a further affidavit that he is the agent of the "party or parties secured by the deed of trust." If ARA were held to be the party secured, serious doubt concerning the validity of the instrument would result, inasmuch as the oath attached is that of the "Attorney and Agent for Small Business Administration." See Pagenhardt v. Walsh, *supra*.

■ In enacting § 646, it was the purpose of Congress to place SBA's se-

curity claims against real property in the several states upon the same level as those held by private parties. United States v. Clover Spinning Mills Co., *supra*, at 278. § 646 alters the general rule giving priority to a lien of the United States over a later lien for state and local taxes. If the government wishes to avail itself of the benefits of the general rule, it should be made abundantly clear in the recorded documents that an agency other than SBA is the secured party and that SBA is acting merely as an agent for such other department of the government. Where the recorded documents uniformly show that § 646 would apply because SBA alone is involved, the government cannot be permitted, long after the transaction has been completed, to seek to prove that SBA was in fact acting for another governmental agency.

The government argues that its position here is supported by United States v. Maes, 316 F.Supp. 1267 (D.Colo. 1969). In that case, the Court held under facts somewhat similar to those here that § 646 was inapplicable because SBA was acting as agent for ARA in making and servicing the loan in question. However, it is not entirely clear from the opinion whether the mortgage papers, as recorded in the appropriate county office, disclosed this fact of agency or not. As there is no discussion in the opinion of any proof offered by the government at the trial to show this agency relationship, it presumably was established by the title documents themselves that SBA was acting for ARA in the transaction. In any event, Colorado law controlled in the *Maes* case. Whatever the result might be in Colorado on facts such as those involved here, this Court is satisfied that under Maryland law SBA was the secured party under this Deed of Trust.

For the reasons stated, the government's exceptions to the Auditor's Report and Account are overruled, and such Report and Account is hereby ratified. An appropriate Order will be entered.