SLOVITER, Chief Judge,
concurring in the judgment.
The majority has written a creditable opinion which reaches a plausible result in hght of the positions taken (and not taken) by the *514 Internal Revenue Service in this case. I believe, however, that there are additional considerations that require some discussion.
Of concern to me is that despite the fact that New Jersey’s tax scheme does provide methods for enforcement of a tax lien after public notice of the lien, as a result of this opinion the mere assessment of taxes due is enough to render that lien choate and hence entitled to priority over a federal tax lien. I do not question that New Jersey’s tax lien would become summarily enforceable, and therefore choate, under United States v. Vermont, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964), when a certificate of debt issued by the Director of the Division of Taxation is docketed by the Clerk of the Superior Court under N.J.Stat.Ann. § 54:49-12, or when a warrant issued by the Director is filed with the county clerk and docketed under N.J.Stat.Ann. § 54:49-13a. However, in this case, neither of these procedures was effectively utilized until the first three federal tax assessments, totalling almost $60,000, had been made.[1] Nonetheless, the majority relies merely on New Jersey’s assessments on March 23,1989 and August 30, 1989 as fulfilling the requirements for choateness. I am far less certain than the majority that some additional act that would provide public notice of the state tax hen is not required to render the lien summarily enforceable.[2]
It is true, as the Division argues, that the Supreme Court stated in Vermont that the assessment under Vermont’s statutory scheme “was given the force of a judgment.” Vermont, 377 U.S. at 359, 84 S.Ct. at 1272 (quoting Bull v. United States, 295 U.S. 247, 260, 55 S.Ct. 695, 700, 79 L.Ed. 1421 (1935)). But the State of Vermont in that case had not only assessed taxes; it also had filed a notice of hen with the city clerk before the federal taxes were assessed. See United States v. Vermont, 317 F.2d 446, 447 (2d Cir.1963), aff'd, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964). The Court’s holding that Vermont’s tax hen was entitled to priority over the subsequent federal tax hen may therefore have reflected an unspoken premise that the pubhc recording of the hen was an element of choateness, either as a matter of federal law or under Vermont’s particular statutory scheme.
Whether there is such a requirement has not been addressed by the Supreme Court,[3] and the few federal district and appellate courts that have broached the question have reached different results. Compare In re Thriftway Auto Rental Corp., 457 F.2d 409, 412 & 414, n. 8 (2d Cir.1972) (applying state court decisions holding city tax hen to arise, not upon assessment, but upon docketing of warrant, and holding city tax hen that arose upon docketing to be “summarily enforceable” under Vermont) with Noriega & Alexander v. United States, 859 F.Supp. 406 (E.D.Cal.1994) (holding that state tax hen under California statutory scheme becomes choate upon assessment and rejecting argument that it does not become choate until *515 notice of tax lien filed). Nonetheless, I do not understand the IRS to so argue in this case and thus leave that issue for another day.[4]
I also cannot agree with another aspect of the majority’s analysis. I agree that under the facts of this case the tax lien based on the Division’s March 23, 1989 assessment met the third requirement of Vermont that “the amount of the lien [be] established” before the federal assessment. Vermont, 377 U.S. at 355, 84 S.Ct. at 1269 (quoting United States v. New Britain, 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954)). By then, the time for protest and appeal of that assessment under New Jersey law had passed. I would not decide, as does the majority, that the requirement that “the amount of the lien [be] established” was met under the New Jersey statutory scheme while the amounts assessed were still subject to protest and appeal under N.J.Stat.Ann. §§ 54:49-18 and 54:51A-13 et seq. We need not include that dictum here, and I believe it is questionable whether the requirement of choateness that the amount of the lien have been established is met as long as the period for appeal and protest has not passed.
Nonetheless, given the IRS’s waiver of the public recording issue I agree with the majority’s result.[5] Because the Division’s lien for $76,554.19 in taxes assessed on March 23, 1989 became definite in amount as of the expiration of the ninety day appeal period, which preceded the first federal tax assessment on September 18, 1989 and exceeded the amount of the approximately $60,000 in escrowed bulk sale proceeds, I would hold in this case that the Division’s lien was entitled to priority as of that time.[6]

. Three federal tax assessments totalling almost $60,000 were made against Monica Fuel on September 18 and 25, 1989 and December 4, 1989. Thereafter, (1) the Division issued a Certificate of Debt to the clerk of the New Jersey Superior Court on February 5, 1990, and the clerk entered judgment on the record of docketed judgments on February 14, 1990, and (2) the Division issued a warrant of execution to one of its employees on February 23, 1990, which was filed with the Camden County Clerk on the same day.

. The Division suggests that any requirement of public recording of state tax liens would impose a "double standard” in determining the choateness of federal and state tax liens. I recognize that a federal tax lien need not be publicly recorded in order to become choate. See 26 U.S.C. §§ 6321-22; United States v. McDermott, - U.S. -, -, 113 S.Ct. 1526, 1531, 123 L.Ed.2d 128 (1993). Whether public recording is required to render a state lien choate is a matter of federal law to be resolved with reference, in the first instance, to the particular state scheme. See United States v. Security Trust & Sav. Bank, 340 U.S. 47, 49-50, 71 S.Ct. 111, 112-13, 95 L.Ed. 53 (1950). The Division cites us to no New Jersey appellate case holding that mere assessment, absent more, renders the state tax lien summarily enforceable.

. The Supreme Court’s decision in United States v. New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954), does not reveal whether the state tax liens at issue in that case had been publicly recorded. Even if there was no recording in that case, the state scheme at issue may have differed significantly from the scheme at issue in this case, where some form of public recording is apparently required before the state may enforce its lien.

. At oral argument, the IRS counsel, in response to a direct question, stated that he was not arguing that its lien was entitled to priority on the basis of the lack of any public recording in this case. See Transcript of Oral Argument, Jan. 24, 1995, at 24.

. I agree with the majority’s holding that neither federal nor New Jersey law requires a state taxing authority actually to levy on a taxpayer's property in order to have a choate lien.

. Contrary to the IRS's argument, Brief for Ap-pellee at 25-26, such a holding would be consistent with In re Priest, 712 F.2d 1326, 1329 (9th Cir.1983), modified, 725 F.2d 477 (9th Cir.1984), which held that a tax lien was not choate upon the taxing authority's mere receipt of a delinquent tax return, in part because the state had taken no action to determine the amount owed by the taxpayer and "the total amount of the lien could not be known until the Director computed the interest, penalties and fees.” Here, the Division's computation of tax, interest and penalties was communicated to the taxpayer in the Division’s March 23, 1989 assessment, and the amounts became fixed at the expiration of the appeal period. For the same reason, such a holding would also be consistent with Brown v. State of Maryland, 699 F.Supp. 1149, 1154 (D.Md.1987), aff'd, 862 F.2d 869, 870 (4th Cir.1988), also relied upon by the IRS.